UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SG & COMPANY NORTHEAST, LLC, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 11 A 452 |
| JAMI SUE GOOD, individually and as trustee of the STEVEN L. GOOD IRREVOCABLE TRUST; and NORTHERN TRUST CORPORATION d/b/a THE NORTHERN TRUST COMPANY, as corporate trustee of the STEVEN L. GOOD IRREVOCABLE TRUST, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling is the question of subject matter jurisdiction over an adversary proceeding transferred here earlier this year from another district. For the reasons set forth below, the court concludes that it lacks subject matter jurisdiction and dismisses the adversary proceeding without prejudice.

### 1. Background

In February 2011, the adversary proceeding captioned *SG & Co. Northeast LLC, et al. v. Good, et al.*, No. 11 A 452, was transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) from the Southern District of New York where the chapter 11 case of the debtors (who are also the adversary plaintiffs) is pending.[1] Accompanying the adversary

---

[1]    The bankruptcy case is *In re SG & Co. Northeast, LLC, et al.*, No. 09-12535 (BRL) (Bankr. S.D.N.Y.).

proceeding on its arrival was the defendants' fully briefed motion to dismiss the amended complaint and to strike certain claims as barred by Illinois law. (The request to dismiss and strike was what remained after the New York court granted the defendants' alternative request to transfer venue.)

Briefly, the amended adversary complaint alleges the following facts. Steven L. Good was chairman and CEO of debtor SG & Company Northeast, LLC (as it is now known), a large real estate auction firm. Good used his position to steal money from the company, shielding the stolen funds by contributing them to an irrevocable life insurance trust. The funds were then used to pay, among other things, premiums on life insurance policies that Good had contributed to the trust. In 1997, Good's wife, defendant Jami Sue Good, became sole trustee of the trust. In 2009, Steven Good was found shot to death in his car in a suburban Chicago parking lot. After his death, proceeds of the insurance policies were paid to the trust. Defendant Northern Trust Corporation was subsequently appointed corporate co-trustee.

The amended complaint has three counts, each arising under Illinois state law. Count I is a claim against Northern Trust and Jami for unjust enrichment. Count II requests a declaratory judgment invalidating the trust. Count III is a claim against Jami for fraud. In Counts I and III, the plaintiffs seek damages of at least $2.28 million.

At the initial status hearing in March 2011, this court set a ruling date in mid-July on the defendants' motion to dismiss and strike. After reviewing the briefs, however, the court concluded supplemental briefing would be necessary. Because the plaintiffs' claims arose under Illinois state law, and because there was a parallel proceeding pending in the state court,[2] it

---

[2] The amended complaint alleges that Steven Good's estate is the subject of a probate proceeding in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois.

appeared abstention pursuant to 28 U.S.C. § 1334(c)(1), rather than dismissal, might be appropriate. On June 21, 2011, the court therefore issued an order raising the abstention question and permitting the parties to brief it.

Both sides filed short memoranda on abstention. In the plaintiffs' memorandum, however, it was disclosed that the plaintiffs were not actually the real parties in interest to prosecute the adversary proceeding. See Fed. R. Civ. P. 17(a)(1) (made applicable by Fed. R. Bankr. P. 7017) (stating that "[a]n action must be prosecuted in the name of the real party in interest"). The real party in interest, they said, was someone named Mark S. Stickel, identified in the memorandum simply as "Plaintiffs' Liquidation Trustee" – no further information given. The plaintiffs promised that Stickel would be substituted as the plaintiff but did not say when.

A review of the record in the underlying New York bankruptcy case clarified Stickel's identity.[3/] It appears that after this adversary proceeding was filed, the debtors successfully confirmed a liquidating plan. The plan established a liquidation trust, and on the plan's effective date all of the "liquidation trust assets," a term defined in the disclosure statement to mean "assets" as well as "all other property and proceeds of property of the Estates or of the Debtors," were transferred to the liquidation trust. The liquidation trust agreement named Stickel the initial liquidation trustee and charged him with, among other things, managing the assets and paying the claims of creditors. Under the plan and liquidation trust agreement, then, the claims in this adversary proceeding are "liquidation trust assets," not assets of the debtors or their estates, and

---

In 2009, the plaintiffs filed a claim against the estate for more than $1.5 million.

[3/]   The court can take judicial notice not only of its own records but also of the records of other courts in related matters. See Opoka v. INS, 94 F.3d 392, 394 (7th Cir. 1996); Philips Med. Sys. Int'l, B.V. v. Bruetman, 982 F.2d 211, 215 n.2 (7th Cir. 1992); In re Ulz, 401 B.R. 321, 324 n.1, aff'd sub nom. C&R Mortg. Corp. v. Ulz, 419 B.R. 793 (N.D. Ill. 2009).

the proceeds of any successful recovery will inure to the liquidation trust, not to the bankruptcy estate. The party ultimately asserting those claims, once the proper plaintiff is substituted, will be Stickel, not the debtors.

Because this new information suggested the absence of subject matter jurisdiction under 28 U.S.C. § 1334(b), *see CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.)*, 363 B.R. 559, 564-66 (Bankr. N.D. Ill. 2007); *Federalpha Steel LLC Creditors' Trust v. Federal Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 879-82 (Bankr. N.D. Ill. 2006), the court felt compelled to order still more briefing, this time on jurisdiction. The court sought assistance with two questions: (1) when a bankruptcy matter is transferred to another district pursuant to section 1404(a), as the adversary proceeding here was, does the jurisdictional law of the transferee forum or the transferor forum apply; and (2) if the jurisdictional law of the transferee forum applies, does section 1334(b) as the Seventh Circuit understands it confer subject matter jurisdiction over the plaintiffs' claims.

Both sides filed supplemental memoranda in which they agreed on the answers to the two questions posed. According to the parties, the law of the transferee forum applies, and under that law the court has subject matter jurisdiction over the adversary proceeding.

## 2. Discussion

The court agrees with the parties' first answer but not the second. The applicable law is indeed the jurisdictional law of the Seventh Circuit. Under Seventh Circuit law, however, the court lacks subject matter jurisdiction. The adversary proceeding will therefore be dismissed.

### a. Applicable Law

As the parties observe, the jurisdictional law of the transferee court governs the plaintiffs'

-4-

claims in their amended complaint.

When an action is transferred to another district under section 1404(a), the law that applies to questions of state law is the law that the transferor court would have applied had the action not been transferred. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see also Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 383 (7th Cir. 2003); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3846 at 83-84 (3d ed. 2007). The transfer does no more than produce "a change of courtrooms." *Van Dusen*, 376 U.S. at 639.

When an action involving federal claims is transferred, however, the law of the transferee forum applies. *McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001); *Murphy v. FDIC*, 208 F.3d 959, 965-66 (11th Cir. 2000); *Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1171 n.4 (8th Cir. 1998); *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994); *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126-27 (7th Cir. 1993); *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174-74 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989). The difference is that whereas state law is expected to be non-uniform, federal law is not. Ultimately, there is only "a single proper interpretation of federal law." *Korean Air Lines*, 829 F.2d at 1175; *see also Eckstein*, 8 F.3d at 1126 ("A single federal law implies a national interpretation."). The transferee court must therefore presume that the law prevailing in its own circuit is as valid as the law of the transferor circuit. *Singleton v. Wells Fargo Bank, N.A. (In re Singleton)*, 269 B.R. 270, 273 (Bankr. D.R.I. 2001).[4]

---

[4]  In *Eckstein*, the court said that "a transfer under § 1404(a) leaves each court to work out the problem [of what constitutes federal law] for itself rather than to guess how the circuit comprising the original district court would reason." *Eckstein*, 8 F.3d at 1126. The disconcertingly broad phrase "each court" does not mean a federal trial court is free to "work out

The principle that the law of the transferee forum applies to federal claims includes not only substantive federal law but also federal jurisdictional law. *In re MasterCard Int'l Inc. Internet Gambling Litig.*, Nos. Civ.A.00–MD–1321, Civ.A.00–MD–1322, Civ.A.00–1169, Civ.A.00–0661, 2004 WL 287344, at *2 (E.D. La. 2004) (noting that the transferee court follows the law of its own circuit in federal question cases, and "[s]ubject matter jurisdiction . . . is just such a federal question"); *see also In re Starlink Corn Prods. Liab. Litig.*, 211 F. Supp. 2d 1060, 1063-64 (N.D. Ill. 2002) (transfer under 28 U.S.C. § 1407); *In re Linerboard Antitrust Litig.*, No. Civ.A.04-4001, MDL No. 1261, 2005 WL 1625040, at *4 (E.D. Pa. July 11, 2005) (same). Indeed, jurisdiction "is arguably the area where the need for uniformity of federal law is most compelling" and is therefore the occasion when application of the law of the transferee forum is most appropriate. *Starlink*, 211 F. Supp. 2d at 1063-64.

Because the law of the transferee circuit applies here, subject matter jurisdiction over the plaintiffs' claims depends on the Seventh Circuit's interpretation of bankruptcy jurisdiction, not the Second Circuit's interpretation.

### b. Subject Matter Jurisdiction

Under Seventh Circuit jurisprudence, the adversary proceeding must be dismissed for lack of jurisdiction. The plaintiffs' claims do not arise under title 11, do not arise in a case under title 11, and, most important here, are not "related to" a case under title 11. *See* 28 U.S.C. §

---

the problem" despite conflicting decisions from its own court of appeals, so that this court, for example, could adopt the Second Circuit's law of bankruptcy jurisdiction and ignore contrary decisions from the Seventh Circuit. A federal trial court to which an action is transferred is still bound by the law of its circuit. *See In re Pan Am. Corp.*, 950 F.2d 839, 847 (2d Cir. 1991) (noting that a transferee district court is "free to decide a federal claim in the manner it views as correct" unless the court of appeals has already made the decision (internal quotation omitted)).

1334(b).

Subject matter jurisdiction is a threshold question, "the first question in every case," *State of Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998), because without jurisdiction "the court cannot proceed at all," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation omitted). Federal courts therefore have an obligation to question their jurisdiction, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986), and must raise the matter even when, as in this case, the parties do not, *Smith v. American Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003). "[N]ot only may the federal courts police subject matter jurisdiction *sua sponte*, they must." *Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002).

Bankruptcy jurisdiction is limited. *In re A.G. Fin. Serv. Ctr., Inc.*, 395 F.3d 410, 412 (7th Cir. 2005); *Wisconsin Dep't of Indus., Labor & Human Relations v. Marine Bank Monroe (In re Kubly)*, 818 F.2d 643, 645 (7th Cir. 1987). It exists only over claims that either arise under title 11 or arise in or are "related to" a case under title 11. 28 U.S.C. § 1334(b). The plaintiffs' claims here do not arise under title 11 because they are state law claims, not claims "created or determined by a statutory provision of title 11." *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th Cir. 2010) (internal quotations omitted); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987). The claims also do not arise in a case under title 11, again because they are state law claims: they do not concern "'administrative matters that arise *only* in bankruptcy cases.'" *Nelson*, 825 F.2d at 719 (internal quotations omitted) (emphasis in original). The real question, then, is whether the claims in the amended complaint are at least "related to" the bankruptcy case.

They are not. The Seventh Circuit interprets "related to" jurisdiction more narrowly than

-7-

other circuits. It does so "to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." *In re Fedpak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996); *see also Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989). Bankruptcy jurisdiction, the court has said, "extends no farther than its purpose," which is "to provide a single forum for dealing with all claims to the bankrupt's assets." *Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987). In this circuit, accordingly, a dispute is "related to" a bankruptcy case only if it "affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *Fedpak*, 80 F.3d at 213-14 (alteration in original) (internal quotation omitted); *see also In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1991); *Xonics*, 813 F.2d at 131.

After confirmation of a chapter 11 plan, moreover, "related to" jurisdiction is "sharply reduced." *Cytomedix, Inc. v. Perfusion Partners & Assocs., Inc.*, 243 F. Supp. 2d 786, 789 (N.D. Ill. 2003); *see Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir. 1991). On confirmation, the bankruptcy estate ceases to exist unless the plan provides otherwise. *In re T.S.P. Indus., Inc.*, 117 B.R. 375, 377 (Bankr. N.D. Ill. 1990). Post-confirmation "related to" jurisdiction is therefore appropriate "only to ensure that reorganization plans are implemented and to protect estate assets devoted to implement the confirmed plan." *Cytomedix*, 243 F. Supp. 2d at 789; *see also Commercial Loan*, 363 B.R. at 565; *Conseco, Inc. v. Adams (In re Conseco, Inc.)*, 318 B.R. 425, 432 (Bankr. N.D. Ill. 2004).

The liquidation trustee's recovery on the claims in the amended complaint will not affect the amount of estate property distributed to creditors in the bankruptcy case.[5] The claims

---

    [5]    The liquidation trustee is not yet the plaintiff, but if he is not substituted as the plaintiff, the action will have to be dismissed under Rule 17(a)(1). Courts faced with this

-8-

belonging to the bankruptcy estate were themselves estate property, *see Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 901 (7th Cir. 2000), and under the debtors' plan those claims were transferred to the liquidation trust. At that point, they no longer belonged to the estate, and following confirmation the estate ceased to exist. Because all estate property has been distributed and there is no longer an estate, the liquidation trustee's victory on the claims necessarily cannot affect the amount of estate property distributed to creditors. *Commercial Loan*, 363 B.R. at 565-66 (reaching this conclusion about liquidation trust's post-confirmation state law claims); *Federalpha Steel*, 341 B.R. at 880 (same).

For the same reason, the liquidation trustee's recovery on the claims will not affect the allocation of estate property among creditors. Again, all estate property, including claims, has been distributed to the liquidation trust. Anything creditors receive from the liquidation trustee's recovery on claims that belonged to the bankruptcy estate will be distributions of trust property, not estate property. Once the claims were transferred to the trust on confirmation, all questions about the allocation of estate property among creditors ended, just as questions ended about the amount of estate property to be distributed. *Commercial Loan*, 363 B.R. at 566; *Federalpha Steel*, 341 B.R. at 881. Jurisdiction over the claims ended as well. *FedPak*, 80 F.3d at 214-15; *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994); *Globaleyes Telecomms., Inc. v. Verizon N., Inc.*, 425 B.R. 481, 495-98 (S.D. Ill. 2010); *Miller v. Conte (In re Import & Mini*

---

situation – an action prosecuted by the wrong party in violation of Rule 17(a)(1) and a lack of jurisdiction if the real party in interest is substituted – have not hesitated to anticipate and address the jurisdictional question, untroubled by its apparently hypothetical nature. *See, e.g, Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1095 (9th Cir. 2004); *Bahlenhorst v. Vrdolyak*, No. 08 C 5474, 2009 WL 65180, at *3-4 (N.D. Ill. Jan. 9, 2009); *Gingiss Owners Ass'n, Inc. v. The Gingiss Grp., Inc.*, 02 C 7318, 2003 WL 22118929, at *2-3 (N.D. Ill. Sept. 11, 2003); *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 109 F.R.D. 99, 101-03 (N.D. Ill. 1986).

*Car Parts, Ltd.)*, 203 B.R. 124, 129 (N.D. Ind. 1996), *aff'd without op.*, 97 F.3d 1454 (7th Cir. 1996); *Conseco*, 318 B.R. at 432-34.[6]

The parties do not quarrel with this analysis in their supplemental memoranda. Instead, they note that the adversary proceeding here was filed before the plan was confirmed, and they distinguish cases like *Federalpha Steel* and *Commercial Loan* because the dismissed adversary proceedings in those cases were filed post-confirmation. Jurisdiction over the adversary proceeding here at least existed at the time of filing. And once jurisdiction is established, they argue, later events cannot divest a court of it. The plaintiffs cite no authority for this argument, but the defendants rely on *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426 (1991).

There are two problems with the parties' argument.

*First*. *Freeport-McMoRan* concerned jurisdiction based on diversity of citizenship, *id.* at 859-60, and the time-of-filing rule in *Freeport-McMoRan* applies in cases with that jurisdictional basis, *see Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004) (stating that "the time-of-filing rule . . . . measures all challenges to subject-matter jurisdiction *premised upon diversity of citizenship* against the state of facts that existed at the time of filing" (emphasis added)). By contrast, the time-of-filing rule "has been applied only rarely to federal question cases." *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1503 (3d Cir. 1996); *see also Iowa Tribe of Kan. and Neb. v. Salazar*, 607 F.3d 1225, 1233

---

[6]    This result might be criticized as formalistic. *See Commercial Loan*, 363 B.R. at 566 n.8 (noting the possible criticism); *Federalpha Steel*, 341 B.R. at 882 n.6 (same). But if so, it is a formalistic result that decades of Seventh Circuit cases compel. If in fact "sensible bankruptcy policy warrant[s] a departure" from those cases when a confirmed plan transfers a claim from the estate to a liquidating trust, that is something for the Seventh Circuit to decide. *Federalpha*, 363 B.R. at 566 n.6. Until then, the duty of trial courts in this circuit is to follow the law as the court of appeals for the circuit has laid it down. *Id.* (citing *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004)).

(10th Cir. 2010); *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92 (1st Cir. 2008); *Kabakjian v. United States*, 267 F.3d 208, 212 (3d Cir. 2001).

A time-of-filing rule is necessary in diversity cases, "where heightened concerns about forum-shopping and strategic behavior offer special justifications for it." *ConnectU*, 522 F.3d at 92. But those concerns are not present in the usual federal question case. *Id.* Though bankruptcy jurisdiction is not federal question jurisdiction *per se*, it bears a much stronger resemblance to federal question jurisdiction than to diversity jurisdiction. *See Bank United v. Manley*, 273 B.R. 229, 245 n.18 (N.D. Ala. 2001) (stating that "Congress modeled bankruptcy jurisdiction after federal question jurisdiction"); *cf.* Hon. Randolph J. Haines, *Federalism Principles in Bankruptcy after Katz*, 15 Am. Bankr. Inst. L. Rev. 135, 141 (2007) ("Bankruptcy jurisdiction is federal question jurisdiction, not only where the Bankruptcy Code provides the rule of decision, but also because it is litigation that affects the rights of a federally-created entity, the estate."). There is no more reason for a time-of-filing rule in bankruptcy cases than in federal question cases.

*Second.* Whatever other circuits may hold, the Seventh Circuit has made abundantly clear that bankruptcy jurisdiction, once established, does not simply continue despite subsequent events in the case. *See In re Zurn*, 290 F.3d 861, 861 (7th Cir. 2002) (noting that bankruptcy is not "'forever'" (quoting *Pettibone*, 935 F.2d at 121)); *Edwards v. Sieger (In re Sieger)*, 200 B.R. 636, 638 (Bankr. N.D. Ind. 1996). To the contrary, subsequent events may well cause the jurisdiction of the bankruptcy court to "lapse[ ]." *FedPak*, 80 F.3d at 214; *Xonics*, 813 F.2d at 131; *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987); *In re Chicago, Rock Island & Pac. R.R.*, 794 F.2d 1182, 1186 (7th Cir. 1986); *see also Import & Mini Car Parts*, 203 B.R. at 129; *Boyer v. Simon (In re Fort Wayne Telsat, Inc.)*, 403 B.R. 590, 594 (Bankr. N.D. Ind. 2009); *Conseco,*

318 B.R. at 432-33; *Sieger*, 200 B.R. at 638 ("[T]here comes a time when the bankruptcy court's subject matter jurisdiction, even though it may have once existed, ends"); *Lawndale Steel Co. v. Fairlane Steel, Inc. (In re Lawndale Steel Co.)*, Nos. 90 B 3508, 90 A 706, 90 A 726, 90 A 737, 1991 WL 242977, at *5 (Bankr. N.D. Ill. May 2, 1991).

One event that causes jurisdiction to lapse is the transfer of property out of the estate. When that happens, the Seventh Circuit has held, jurisdiction to address disputes concerning that property ends: "[J]urisdiction does not follow the property. It lapses when [the] property leaves the estate." *Xonics*, 813 F.2d at 131; *see also FedPak*, 80 F.3d at 214; *In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992) (finding that sold property "was no longer part of the bankrupt estate" and that the bankruptcy court "had no jurisdiction to determine rights to the property"); *Chicago, Rock Island*, 794 F.2d at 1186 ("That some land was once owned by a bankrupt does not supply federal jurisdiction of disputes concerning that land"); *Import & Mini Car Parts*, 203 B.R. at 129 (affirming dismissal of fraudulent transfer claim brought by assignee of chapter 7 trustee's judgment because once transferred the judgment "was no longer property of the estate").[2/]

It makes no difference, then, that the claims here arose prepetition, the adversary proceeding asserting them was filed before confirmation, and the bankruptcy court had

---

[2/] In *Chapman v. Currie Motors, Inc.*, 65 F.3d 78 (7th Cir. 1995), the court of appeals held that dismissal of a chapter 13 bankruptcy case does not automatically deprive the bankruptcy court of jurisdiction over a debtor's pending adversary proceeding given that "federal jurisdiction over the adversary proceeding when initiated was secure." *Id.* at 81. Instead, the court said, a bankruptcy court has the discretion to retain the adversary proceeding or "relinquish jurisdiction . . . if no possible federal interest . . . would be served by retention." *Id.* at 81-82; *see also In re Statistical Tabulating Corp.*, 60 F.3d 1286, 1287 n.1 (7th Cir. 1995) (dictum). It is unclear how *Chapman* can be squared with the vast bulk of decisions from the court of appeals (decisions like *FedPak* and *Xonics*) that grant the bankruptcy court no such discretion and plainly require dismissal when subsequent events mean the test for "related to" jurisdiction is no longer satisfied.

jurisdiction to entertain them at the time they were filed. The claims were estate property, just as any parcel of real estate would have been. *See Polis*, 217 F.3d at 901; *see also Holstein v. Knopfler (In re Holstein)*, 321 B.R. 229, 234-35 (Bankr. N.D. Ill. 2005) (noting that the analysis of what constitutes estate property is the same for "causes of action as it is for cars or televisions"). Once those claims were transferred to a third party, the liquidation trustee, at plan confirmation, they left the estate as surely as if they had been parcels of real estate conveyed to a third party buyer. At that point, there was no longer any purpose for the bankruptcy court's continued exercise of jurisdiction over the claims. *See Xonics, Inc.*, 813 F.2d at 131. Their outcome could no longer affect the amount of estate property to be distributed or the allocation of that property among creditors, because all estate property had been distributed and the estate had ceased to be. Jurisdiction to entertain the claims lapsed.

For these reasons, the court lacks jurisdiction over the claims in the amended complaint. The adversary proceeding will accordingly be dismissed for lack of subject matter jurisdiction.

### 3. Conclusion

This adversary proceeding is dismissed without prejudice for lack of subject matter jurisdiction. A separate Rule 7058 judgment will be entered consistent with this opinion.

Dated: November 21, 2011

_____
A. Benjamin Goldgar
United States Bankruptcy Judge